Good morning. First case today is number 24-1197, Gustavo Diaz v. FCA U.S. LLC. Mr. Wu. Good morning. May it please the Court, Ryan Wu for appellants. I'd like to reserve three minutes for rebuttal.  In over 90 pages of factual allegations, plaintiff's operative complaint provides extensive detail regarding FCA's pre-sale knowledge of the rear differential defect alleged in the complaint. The factual allegations are more than sufficient to state a claim for fraudulent omission under the federal rules, under which pre-sale knowledge may be pleaded generally because most of the relevant facts are within the defendant's exclusive control. The district court's duty on a Rule 12b-6 motion is to accept the alleged facts as true and draw all inferences in favor of plaintiffs. The district court erred by crediting defendant's version of events, effectively drawing inferences in defendant's favor. Plaintiff's allegations regarding pre-sale knowledge should have been evaluated in their totality rather than one by one. And based on publicly available documents, plaintiffs have more than sufficiently stated claims for fraudulent omissions. All right. You're going straight to the merits, but what about jurisdiction? Yes. Well, the court in this case certified the case for appeal under Rule 54b. So there are two elements of that. One is finality, and the other is jurisdictional administration. In terms of finality, the claims here don't entirely overlap with the remaining claims in the district court, unlike the Sussex case of defendant's sites. So the remaining claims in the district court just involve the New Jersey warranty claim and the Texas warranty claim. Here we have five plaintiffs who have all of their claims extinguished. So for them, their case is done. It's final for them. So in terms of finality, clearly their claims would have to be adjudicated on appeal independent of the remaining claims in the district court. All right. You said they don't entirely overlap. Yes. Is that the standard? The standard was whether or not the fraud-based claims and the warranty claims arise from the same transaction or occurrence. Isn't that the standard? Well, there is no set standard. The court in Sussex said that the Third Circuit doesn't have a bright-line rule on this particular issue. So there's sort of various ways you can look at this. They say that if the plaintiff is just alleging alternative theories, then that's not sufficient. But this is not an alternative theory because I think for the claims that are extinguished, we have to deal with the pre-sale conduct. The pre-sale conduct is not at issue in the claims that survive. So just to tease out Judge Hardiman's question, it seems that there's kind of two answers to it. One, do we use a same transaction or occurrence test for purposes of Rule 54B? And then if we do, is this the same transaction or occurrence? But I guess what you're saying, if I'm unpacking what you said, you're saying, no, we don't use a same transaction or occurrence test, but even if we would, you would still win? Am I tracing what you're saying or something different? I think, Judge Phelps, in the Girardi case and in the Sussex case, the court took pains to say that the Third Circuit shouldn't impose a one-size-fits-all test because these cases are so facts-driven. So the same transaction test may be appropriate in some cases, but here it's not even the same transaction because the claims on implied warranty don't involve pre-sale conduct. So we have to look at the facts involving pre-sale conduct for the claims that have been extinguished. In Sussex, there were five claims. Four were dismissed, one was not, and our court said that the order on the four was not final, even though there was overlapping evidence, but it was not coextensive. Claim five required additional evidence of intent to misrepresent. And so I hear what you're saying about there being some additional evidence necessary for the unresolved claims in your case, but isn't there a significant overlap? And the term that we used in Sussex was, you know, the thrust of the counts relies on the same crucial facts. Well, the same crucial facts, I mean, as this case illustrates, the District Court order turned on facts regarding pre-sale knowledge. Those wouldn't be at issue in the surviving claims, so they're not the same. What about the crucial facts about the differential and its strength, and whether the 2023 version that came out is significantly different from the one that class members purchased? I mean, would you acknowledge at least there are some crucial facts? Yes, I can see that there is crucial overlap on the merits, but there is a significant distinction between these claims because the pre-sale knowledge element is such a crucial part of the consumer law claims. So, you know, in terms of, and again, we have the three California plaintiffs and the two Florida plaintiffs whose claims are completely extinguished. The thing is they have to keep their cars, you know, and typically in these cases they're going to have to keep their cars and they're going to have to wait until the claims are adjudicated below, maybe it'll take two years, three years, and then we go up on appeal and then they'll have their day in court maybe on appeal, but that's going to be four or five years. When their claims have already been extinguished in 2023, you're asking for the plaintiffs to sort of wait around for three or four years when we have the appeal before your honors. And so I think it's a pretty straightforward 12B6 appeal here. Could it be to your benefit to not have this appeal heard now because, you know, there are some claims that are going to go forward to discovery. You may get some discovery that might lead you to amend on behalf of, you know, seek leave to amend and maybe try to resuscitate some of the other claims. Yeah, but I think your honor makes a good point, but with respect to the California and Florida plaintiffs, their claims are dismissed, so we wouldn't be able to get discovery as to pre-sale knowledge regarding claims that they would otherwise have. Well, I mean, but if this is not a final order, then it is subject to revision sometime before the entire matter is complete. So, I mean, is there any possibility for trying to revive claims and seek a revision of the order dismissing that? Yes. You know, this is an interlocutory appeal, and so, you know, clearly we can appeal at the end of the case. We just believe that given the procedural posture of this case, given that it's been certified by the district court on Rule 54, that we think it's appropriate for decision now. Of course, if your honors believe that Sussex and Girardi and these other cases provide for a different outcome, then we will obviously have to come back later on. 54B requires the court to certify that there's no just reason for delay, correct? Yes. And the court said that in its order? Yes. Doesn't our case law require an explanation? It's an abuse of discretion standard, your honors, so I think, you know, that could be a problem. How can we evaluate whether there was or wasn't a just reason for delay if the court doesn't give us any indication as to why it thought there was no just reason for delay? Well, I can provide the reasons, your honors, which is that the plaintiffs, you know, five plaintiffs have their cases extinguished, and I think for them they would, you know, there's no reason to delay their appeal. And it suffices for counsel to fill in that gap? I mean, it's, well, you know. What does our case law say about the court's obligation in a 54B certification regarding the no just reason for delay? I think the court, admittedly, the court could have provided more extensive analysis. Well, I'm not asking about the district court now. I'm asking what's your understanding of what our case law says about that? Oh, there should be some analysis of judicial administration. And there wasn't. So we'd be violating our own case law if we didn't remand it on that ground alone. Your honors, it could be.  Appreciate your candor. Does your honors want me to continue with the 12B6 analysis? Or I could. Okay, why don't you. You've got time left, so why don't you tell us what you'd like about the merits? Yeah, I think the TSBs in particular are an important facet of these kinds of cases. And we have multiple TSBs that talk about the symptoms that we've alleged in the complaint. Not only that, I think, you know, for example, the May 30, 2015 TSB talks about the shake and vibration generated in the rear of the vehicle. Not only do we have paragraphs that talk about how that's a symptom of the defect, we have plaintiffs that complain about that particular symptom. They took their car to the dealer, and the dealer replaced the rear differential. That includes plaintiff Kistler, ER 383. In the June 24, 2016 TSB, it talks about a whining noise from the rear axle due to the propeller shift. We have a plaintiff Veal on ER 375, 376. He complained about a whining noise in the rear of his car, and the dealer replaced the rear differential. So the district court said that the TSBs needed to have magic words. But based on sort of the allegations in the complaint, the details that we provided, the fact that the plaintiffs complained about the symptoms that we alleged to be part of the defect, the fact that the dealers themselves understood these symptoms to be a rear differential issue, I think just under the Rule 12b-6 standard where you draw inferences in favor of the plaintiff and most favorable to the plaintiff. It has to be the case that the TSBs... Is there knowledge, constructive knowledge, based on the first complaint from the first plaintiff who bought his car in 2015? Or is there some minimum number of complaints that would be required before you can say that they're complaining? In terms of, well, you have to look at it in terms of the totality, right? So we do have a NHTSA complaint. We do have complaints on the message boards that predate the purchase of the first plaintiff in 2015. We have a TSB that predates the purchase from the first plaintiff. And we have additional allegations about the testing at the Arizona Center, the warranty data, the other manufacturers using different materials, the fact that there's a third-party aftermarket to try to fix this problem. So we have other allegations that would support and bolster the TSB and the NHTSA facts in the complaint. So I assume my time's up, and I'll take it. We'll hear Your Honor about it. Thank you, Mr. Wu. Mr. Deannoy? Deannoy, Your Honor. Pardon me? Don Wah. Don Wah. Thank you. May I please? I apologize. No problem. Good morning, Your Honors, and may it please the Court. I'm Stephen Don Wah. I represent FCUS in this manner, and I was advised long ago to quibble. I was ahead. But I do have some points I do want to make on the jurisdictional issue, which I gathered from Your Honor's questions with my opposing counsel. I think Your Honors do get the issues that exist in this appeal. I will start. I don't believe there's any dispute that the Court's jurisdiction depends on whether or not the district court properly granted the Rule 54B certifications. I do want to make some clarifications. Plaintiffs contend in their reply brief that the decision about whether or not to certify the decision under Rule 54B is an abuse of discretion standard, but that overlooks that there are two prongs, as counsel admitted here this morning, the first prong being that there needs to be a final judgment. That is not reviewed under an abuse of discretion standard, because as this Court has previously stated, a district court cannot, in its exercise of discretion, treat as final that which is not final. Now, admittedly, the no just reason for delay finding is reviewed for an abuse of discretion standard. With respect to the finality issue, opposing counsel is right. You know, this Court, there is no bright-line rule. This Court's never said there's a bright-line rule, and it would be difficult to have a bright-line rule because of the different scenarios that arise. But that does not mean that there's not a lot of direction from this Court's prior opinions. And Your Honors have mentioned Sussex. We've cited Allegheny in our briefing and several other cases in our briefing, and those cases teach some very important lessons in terms of trying to decide between what is and what is not final as to a judgment when some claims are disposed of and some are not in a district court. And those teachings indicate, and I think the totality of them was, as Judge Freeman, I believe, indicated, which we have to look at, do these arise from the same transaction or occurrence? I think all the cases generally point in that direction. You know, that's kind of a bold proposition since the Federal Rules of Civil Procedure were amended in 1948 to eliminate the same transaction or occurrence requirement from Rule 54B. You're telling us it's gone textually, but it's still there. It's a phantom of equal strength. Right. But if we look at some of the teachings from the cases from this Court, you know, the cases have taught that Rule 54B may not be invoked in opposition to the fundamental rule against claim splitting. And if we look at the claim splitting jurisprudence, the claim splitting jurisprudence looks at whether or not we're dealing with a single claim or multiple claims. The distinction there is whether or not they arise out of the same transaction or occurrence. And that was only one of the many considerations. The claim splitting analysis was only one of many, right? That's not singularly dispositive, is it? Yeah. That is right, Your Honor. And that's, I mean, and we went through the different, in our brief, the different factors that courts considered. And, you know, that's why, you know, it isn't a bright line rule. But the courts speak in terms of if we're only dealing with one legal right, even if we're seeking multiple remedies for an alleged violation of that right, it's a single claim. Let me just press you a little bit on Sussex. You probably have a sense of what the strongest case in your favor is. If I were you, I'd say it was Sussex. But, you know, Sussex is an interesting case because it's almost the inversion of this case. This case, fraud claims were dismissed and warranty claims remain. In Sussex, warranty claims were dismissed and fraud claims remain. And so the extent that fraud claims are kind of a bigger, fatter claim in the sense that they involve post-sale and pre-sale conduct and warranty claims don't, the facts of Sussex don't provide you much help. In fact, they probably counsel for an opposite result. So the language of Sussex is great, but it's a completely inverted case. Your Honor, I would suggest that that's reading more into Sussex than it's probably there in terms of in relation to our case. So the fraud claims here are based on the same transaction. The fraud claims here at the fundamental level is you sold me a vehicle with an alleged defect. So that is the foundation of the fraud claim. We don't get too far into pre-sale because they don't allege that there was some fraudulent inducement or some fraud that occurred prior to the purchase transaction. So the fraud alleged here is in the purchase transaction. You sold me a vehicle with an alleged defect. But if you dismiss the fraud claim not for that basis but for the lack of intent to deceive or for pre-sale knowledge, then the warranty claim would be just as strong because the defect may still be there. At one level, it depends on maybe the basis for dismissing the fraud claim. That's really into the weeds. The case law doesn't say to go that deep. But it strikes me that the fraud claims here weren't dismissed necessarily based on a theory that would automatically reject the warranty claims. Indeed, some of them remain. And that is correct, Your Honor. And the fraud claims here are fraud claims that are based on a transaction, the same transaction that resulted in the warranty. The way that pre-sale knowledge comes into that under the law on the underlying claims is that FCAUS could not have committed fraud in that transaction unless it knew that at the time it was selling that vehicle that it was selling a vehicle with a defect. So vis-a-vis the plaintiffs, we're still looking at the same transaction, and that is the transaction of their vehicle purchase. And so I don't necessarily agree that we have a whole separate time period relating to the fraud claims here and a whole separate time period relating to the warranty claims because those claims do arise out of the exact same transaction. Well, Judge Freeman referenced in her question the possibility for discovery. Surely, discovery for the fraud claims would involve inquiries into different time periods than the warranty claims and involve different topics for the warranty claims. If they were to make the same inquiries for the fraud claims, would you say – another way of putting it is, if they were to serve the same discovery for you that, let's say, they prepared when the fraud claims existed, would you say, oh, no, no, no, that's too far, some of that goes to just fraud claims? Well, and we've had those disputes in other cases where fraud claims have been dismissed. Plaintiffs will often take the position that an implied warranty claim, a defendant's knowledge has some bearing on the outcome of that claim, so they will take the position that knowledge discovery is in bounds for those types of claims. We have taken the position, Your Honor, that knowledge discovery is out of bounds for those types of claims. So that seems that there's something about the transaction or occurrence that's different. If it's not going to be the same – if you tell me it's the same transaction or occurrence, in my head I think, well, then you'd get the same discovery for both claims. And if the thought is, no, you'd probably get different discovery for both claims, then maybe it's not the same transaction or occurrence. Yeah, I have not looked at it that way, Your Honor, you know, because reading the cases, we're talking about the factual basis for the claims. And the distinction that plaintiffs want to make here, and I think we're discussing, the only distinction being that element of pre-sale knowledge. And I think our best case on that probably would be Sussex. You are right that it is a reverse scenario. But I think the outcome is the same because what we're – you know, ultimately we're talking about a huge potential for successive appeals in this case because one of the main issues for all of the claims is the transaction and whether or not there was a defect in those vehicles at the time of the transaction. And if there were – if ultimately we move forward in the district court on the fraud and warranty claims or the warranty claims, there could ultimately be a finding that those vehicles are not defective. And if that were the case, we're potentially going to be right back up here, you know, with a successive appeal and everything we're doing here today and that you might be doing with respect to your opinion might be a waste of time. And I think that's what the certification analysis is designed to avoid. And it would have been helpful if the district court would have provided – Go ahead. It would have been helpful if the district court would have provided a little of that analysis in terms of this is how – if this comes back on appeal, this is what I do. If it comes back this way on appeal, this is what I do for the – no just reason for delay. We don't have that. Maybe that's harmless error. Maybe we just infer that because the docket's going to indicate how this may play out. Most judges are capable of doing that in their heads. Well, I wouldn't agree. I don't think, Your Honor, that it would be harmless error. I think we've set forth in our brief a lot of ways that, you know, the finding is, you know, contrary to the standard because, you know, there's a lot of ways in which if we go back to the district court, you know, we could be right back up here and we would be having, you know, successive appeals. You know, ultimately what the district court here did was announce the standard and, you know, just basically conclude that the standard had been met. But there was a lot of problems with that because the interrelationship between the claims, like I said, I don't want to repeat myself, but ultimately a finding of a defect. You know, we could be back up here in a year, two years. You know, it's hard to speculate what that may be. But, you know, that's a lot of work between now and then. If we hold it was an abuse of discretion not to provide any reasons for the statement of no just reason for delay, but we disagree with you about the other issue that we've been discussing about same transaction recurrence, is there any practical impact to that remand order? Is the remand order, does the case in any way look different on remand? No, I don't think so, Your Honor. I mean, from a practical standpoint, I think it would be a dismissal of the appeal for lack of jurisdiction. And then we go back to the district court and we do discovery on the remaining claims. And ultimately, you know, depending on how those claims come out, we could be back up here with a fulsome appeal or we could be back up here with a very narrow appeal, depending on what the findings ultimately are. And the district court is the things like summary judgment, class certification, ultimately potentially a trial on the merits. You know, still a lot of things to happen. All depending upon the district court's view of the warranty claims. Exactly, Your Honor. Yes. For purpose of Rule 54B finality, what is the significance of any of the dismissal without prejudice part of Claim 3? And that was Claim 3, the California claim, I believe. Claim 3 was the, let me see, it was dismissed as multiple parties, but not all. Count 3 was violation of Magnuson-Moss warranty.  That's for the entire putative clause. Yeah, that claim, at least as brought by the two remaining named plaintiffs, remains in the case as to those plaintiffs. I thought it was dismissed with prejudice as to some and without prejudice as to others. Right. I don't know that that has any bearing, because the finality, the Rule 54B certification was only as to the fraud-based claims. So I don't think the district court nor the parties really contemplated that being a part of the issue up here on appeal. All right, so the fact that there, and has the time passed for plaintiffs to amend as to that claim if they did choose to? There was no scheduling order entered in the underlying case in terms of amendment. So there's been no, no, it has not, Your Honor. I don't have anything further, Your Honor. All right, thank you, Mr. Bienlois. Thank you. Let's hear Mr. Wu's rebuttal, please. Just a point on finality. The Girardi case, the Third Circuit did decide, or at least conducted the analysis and found finality. And part of the analysis is there's a separate recovery in the claim that was on appeal. Here, the consumer fraud claims do authorize injunctive relief, which is not available for the warranty claims, which are a benefit of the bargain damages. So the injunctive relief may include replacement of the rear differential, for example, or potentially corrective notice to consumers as to the fix, if that's. That's a remedy. That sounds like it's right in the heartland of alternative theory of recovery, or it's a different remedy. It doesn't seem to go to the issue of transaction recurrence and the things that Judge Phipps was asking about. In Girardi, the court did say that if there's a distinct remedy, completely separate, not in addition to the remedies at issue, but a distinct remedy, that is something that should be considered as part of the finality analysis. So, you know, in Girardi, the court. That's tough for me because you're holding out the possibility of injunctive relief, but typically the court doesn't lift its hand in equity or for injunctive relief if you've already been compensated through it for damages or otherwise. And so, you know, there's probably going to be an election of remedies issue and or just we can't issue, no one's going to issue an injunction for those sorts of things. Am I misunderstanding the law? I mean, this is state law stuff, but I thought that that was, I thought that's how it worked. You don't typically get an injunction after you've been made whole by damages. That's correct, but that's a legal issue that should be decided on a later proceeding, not on a pleading motion or on a Rule 54 dispute. So, and again, I think, you know, in Girardi, admittedly, the court did reverse on the judicial administration ground, but the analysis on finality is interesting and maybe something that could guide the court on it. I just, if you don't have anything else, maybe you have something else that you want to prioritize over this, but, you know, your opposing counsel says Sussex is the best case for him, and I haven't really heard you pound that Sussex doesn't win him the day. Do you want to give a shot for why you survived Sussex? I'd echo your Honor's teasing out of the issues in Sussex. Sussex, the claim subsumes, the claim that's in the district court subsumes the claims that are on appeal. So, you know, the claim in the district court, if it's resolved, would resolve the issues on appeal as well. So it would be redundant for the appellate court to decide these issues when the district court could do that. So Sussex is still right. Sussex is right. Sussex is right, but in our case, our claims aren't subsumed, as your Honor indicated. The pre-sale knowledge is a distinct element. The timeline is different. If we conduct discovery, we'd have, you know, all kinds of questions involving sort of pre-sale conduct that we wouldn't be able to gather now when those claims are dismissed. So, you know, I think the problem here is we're going to, let's say, remand to the district court, deal with the warranty claims, come back up, potentially get a reversal on the Rule 12b-6 claims, and then we go back down and then have to deal with the Fraudulent Concealment Claims all over again. And that seems to me to be very inefficient, and Rule 54 is all about prioritizing judicial efficiency. Thank you very much, Mr. Wu. Thank you, Mr. Dionois. The court appreciates the good arguments and the professionalism, candor. Thank you very much. The court will take the matter under advisement.